[Civ. No. 7607. Second Appellate District, Division Two.—May 16, 1933.]

RUSS LUMBER & MILL COMPANY (a Corporation), Appellant, v. HELLMAN COMMERCIAL TRUST & SAVINGS BANK (a Corporation), Respondent.

E. S. Williams for Appellant.

Freston & Files, Ralph E. Lewis and Clarence M. Hanson for Respondent.

PARKER, J., *pro tem.*—This case is a sequel to the case of *Russ Lumber & Mill Co.* v. *Peoples Trust & Savings Bank,* reported in 76 Cal. App., page 438 [244 Pac. 934]. In that case the plaintiff herein recovered a judgment against the Peoples Trust & Savings Bank on certain orders for lumber and building material which had been given to the Russ Lumber & Mill Company in the name of the Peoples Trust & Savings Bank by its president, J. C. Odell. It was decided in the former case that these orders were obligations of the bank. That judgment being paid only in part, the Russ Lumber & Mill Company brought the present action against the Hellman Commercial Trust & Savings Bank, which, pursuant to section 31 of the Cali-

fornia Bank Act, had purchased the whole of the business of the Peoples Trust & Savings Bank and had taken possession and control of all of its assets. This action was brought against the Hellman Commercial Trust & Savings Bank by the plaintiff herein as a judgment creditor of the Peoples Trust & Savings Bank. The complaint sets up two causes of action. The first count seeks to recover from the defendant on the ground that it in writing expressly assumed and agreed to pay all of the debts and liabilities of the commercial department and of the savings department of the Peoples Trust & Savings Bank. The second count (together with the supplemental complaint as an addition to the second count) seeks to recover from the defendant on the ground that the latter received the assets of the Peoples Trust & Savings Bank under a trust to apply the same to the payment and discharge of the indebtedness and liabilities, that is to say, of the creditors, of the Peoples Trust & Savings Bank. The only issue under the first count is whether the plaintiff is a creditor of the commercial department or savings department of the Peoples Trust & Savings Bank.

It would be useless to detail all of the facts of the case further than by reference to the same as outlined in the case of the plaintiff against Peoples Trust & Savings Bank, as found in the cited report.

It is not seriously contended by appellant that either of the departments named were indebted to it. True, there are facts from which an inference may be drawn supporting the theory of appellant, but the same facts do permit the inference drawn by the trial court to the contrary.

The claim of plaintiff arises out of a transaction which may be here set forth. One Schliem, a general contractor, had come upon a difficult business situation where his financial ability was not sufficient to carry on. He had attached to himself many anxious creditors, who were pressing for settlement. Among these was the Peoples Trust & Savings Bank, which will hereafter be referred to as Peoples Bank. An arrangement was effected whereby Schliem and his wife entered into a trust agreement with the Peoples Bank. The plan was that the Schliems should turn over to the bank, in trust, a number of pieces of real property and other securities, which property should be

held by the bank to secure payment of the indebtedness accrued and such additional advances as might be necessary and advisable. The trust expressly stipulated that Peoples Bank had no interest in the property, either real or personal, nor did it pay any part of the consideration for any thereof. The entire scheme was conducted through the trust department of the Peoples Bank, and the business of Schliem carried on through means of the trust. It worked out to the extent that all creditors were satisfied save and except the creditor Peoples Bank. The trust was therefore carried along, and in furtherance thereof the real property was improved and other things done.

It was after this that the present plaintiff enters into the affairs of the trust. The plaintiff did furnish, sell and deliver to the trust certain lumber and material upon which the debt rests. Some time thereafter the present defendant, Hellman Commercial Trust & Savings Bank, which will hereinafter be referred to as the Hellman Bank, began negotiations for the purchase of two departments of the Peoples Bank. These two departments entering into the purchase and sale negotiations were the commercial department and the savings department. The negotiations were consummated on May 21, 1920, and the result set forth in an agreement of that date between Hellman Bank as purchaser and Peoples Bank as seller. The agreement recites that the same is executed in pursuance of the terms of section 31 of the Bank Act, and limits the agreement to the assets and liabilities of the commercial and savings departments of the Peoples Bank. Section 23 of the Bank Act provided for the division of a bank into departments and that the capital and surplus of each department should be considered and treated as the separate capital and surplus of such department as though each department was a separate bank. Nothing appearing to the contrary, we assume the organization and conduct of the departments of the Peoples Bank was in accord with the law cited. To repeat, the agreement of May 21, 1920, provided for and contemplated the sale of the commercial and savings departments only, and thereafter, according to the record before us, the trust department of the Peoples Bank continued to operate independent of the agreement. The trial court found that the obligation

existing on the part of Peoples Bank was an obligation of the trust department and not a liability of either the commercial or savings department.

We think the facts support the finding, inasmuch as the final analysis leads to the conclusion that the commercial department of the Peoples Bank was simply a creditor under the trust arrangement. In passing, we might note that in the absence of express statutory provision we would look somewhat askance at the idea of a division of the entity. However, and perhaps unwisely, the lawmakers have sanctioned the creation of strange financial hybrids, and we may indulge the thought that some sufficient reason prompted the legislation. We cannot disregard the statute.

■ Under a second count of the complaint plaintiff seeks to fasten liability upon Hellman Bank on the theory of a trust, express or implied. The basis of the claim seems to be that the Hellman Bank did eventually absorb all of the assets of the trust department as well as the other departments, and that under the express terms of the Bank Act (section 31), as well as upon recognized principles of equity, an obligation was thereupon imposed to the end that all creditors be paid at least *pro rata*. An extended review of the law or of the authorities becomes unnecessary for the compelling reason that there is a lack of facts to which application of the law may be made. There is evidence to the effect that such trusts as were taken over by the Hellman Bank were individual trusts, assumed through substitution following consent of beneficiaries and arrangement between the parties interested in each transaction.

There is a mass of records involving the entire matter, and a fair analysis thereof will support the trial court's finding that the Hellman Bank purchased certain securities only and that the Hellman Bank in consideration therefor paid certain specified liabilities of the Peoples Bank. It does affirmatively appear that, pursuant to the Bank Act, the Peoples Bank had deposited with the state treasurer the sum of $100,000, represented by approved securities. This deposit was for the faithful performance and due execution by Peoples Bank of its court and private trust business. When it was shown to the superintendent of banks and to the state treasurer that the condition of the deposit had been fulfilled, the securities were returned to

Peoples Bank and by the latter transferred to Hellman Bank. There is not a single bit of evidence disclosing the source of this fund. Nothing indicates it to have been at any time the property of the trust department. This fund was turned over to Hellman Bank and by the latter accepted as a part consideration for the discharge of certain liabilities of Peoples Bank. It was not retained as an asset, the admitted fact being that all that the Hellman Bank ever received from Peoples Bank was insufficient, by a considerable margin, to liquidate the deposit and banking liabilities assumed. While held by the state treasurer this fund was subject to any claims that plaintiff might have urged, and the fact of its being in deposit was known to plaintiff. The fund, when released, was released to the Peoples Bank, and again might have been made the source of satisfaction of plaintiff's claim. No action of any sort was taken.

The trial court found the transaction between the banks one of purchase of definite assets. The assets of the trust departments as a whole were not involved. There is not the slightest suggestion of fraud in the record nor is there any suggestion of the inadequacy of consideration paid by the Hellman Bank for each and every asset of the Peoples Bank transferred. We are not inclined to detail the various schedules of items involved in the transaction, as no helpful result would follow.

The whole case presents an oft met situation in appellate practice. The situation is one where sufficient background exists to support the claim of appellant, in the abstract. On the other hand, permissible construction leads to another conclusion negativing the contention. The trial court's findings have evidentiary support and are sufficient to sustain the judgment.

Just how far the provisions of the Bank Act might go in sustaining the claim of constructive trust it is needless to determine. At this particular time it would be a dangerous experiment to attempt any strange or fanciful construction of the Banking Act, or by academic array of theories to cast uncertainty upon the general banking plan as outlined in the statute.

It is unnecessary to consider the question of the statute of limitations.

Certain arguments are presented regarding the form of the pleadings and the issues arising therefrom. These questions are beside the inquiry. ▮ It is the settled law of this jurisdiction that when a case is tried upon the theory that the pleadings present specific issues, and evidence *pro* and *con* is adduced thereon, it will be too late, after determination, to present the claim of negative pregnants and faulty denials. And, it may be added, if the denials are held admissions the result would not be changed, inasmuch as the findings contrary thereto would not be essential to the judgment.

Judgment affirmed.

Craig, Acting P. J., and Stephens, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 15, 1933, and an application by appellant to have the cause heard in the Supreme Court after judgment in the District Court of Appeal, was denied by the Supreme Court on July 14, 1933.

Curtis, J., dissented.